**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF TEXAS**

In re:

DWAYNE PAUL BRIDGES,                            Chapter 7

    Debtor.                                     Case No.: 19-44181
_____/

KAPITUS SERVICING, INC, AS
SERVICING AGENT FOR TVT CAPITAL
LLC,                                            Ad. Pro. No. 20-04009

    Plaintiff,
  v.

DWAYNE PAUL BRIDGES,

    Defendant.
_____/

**KAPITUS SERVICING, INC.'S**
**AMENDED COMPLAINT TO DETERMINE**
**NON-DISCHARGEABILITY OF DEBT**

Kapitus Servicing, Inc., formerly Colonial Funding Network, Inc., as servicing agent for TVT Capital, LLC ("Kapitus" or the "Plaintiff"), by and through its undersigned attorneys files this Amended Complaint[1] under section 523 of Title 11 of the United States Code, 11 U.S.C. §§ 101 – 1532 (as amended, the "Bankruptcy Code") objecting to the dischargeability of a pre-petition debt owed by Defendant Dwayne Paul Bridges ("Bridges" or the "Debtor") to Kapitus and in support hereof alleges as follows:

---

[1]     Kapitus files this Amended Complaint pursuant to rule 15(a)(1)(B) of the Federal Rules of Civil Procedure. For convenience for the Court and the Debtor, attached hereto is a redline reflecting the changes from the original Complaint.

## JURISDICTION AND VENUE

1. This is a core proceeding under 28 U.S.C. §157(b)(2)(I) and is brought pursuant to section 523 of the Bankruptcy Code and rule 4007 of the Federal Rules of Bankruptcy Procedure.

2. Subject matter jurisdiction is conferred upon this Court by 28 U.S.C. §§ 157 and 1334.

3. Venue over the instant action properly lies in this Court pursuant to 28 U.S.C. §1409(a) because this Complaint arises in Debtor's chapter 7 bankruptcy case.

4. If the Court should find that this is not a core proceeding, Kapitus consents to entry of final judgment by the Court.[2]

5. This Adversary Proceeding relates to *In re Dwayne Paul Bridges*, Case No. 19-44181 (Bankr. N.D. Texas) (Chapter 7), now pending in this Court (the "Bankruptcy Case").

## THE PARTIES

6. Plaintiff Kapitus, is a Virginia Corporation, and at all relevant times maintained its offices formally located at 211 Bulifants Blvd., Suite E, Williamsburg, VA 23188 and currently located at 2500 Wilson Boulevard, Suite 350, Arlington, VA 22201 and 120 West 45th Street, New York NY 10036.

7. Upon information and belief, Dwayne Paul Bridges is a natural person and is a resident of the state of Texas residing at 920 Lynch Bend Rd. Springtown, TX 76082.

---

[2] Notwithstanding any of the allegations and claims herein, the institution of this Adversary Proceeding, the filing of this complaint and any other appearance in this Adversary Proceeding and in the above-referenced bankruptcy case (the "Bankruptcy Case"), including the submission of motions, opposition papers, and entry of orders, is without waiver, and express reservation, of any and all of Plaintiff's rights, defense and remedies available at law and in equity, including, without limitation, under the Agreement (as defined below), Uniform Commercial Code, any other applicable federal or state law and/or commercial code, and the Federal Arbitration Act, 9 U.S.C. § 1 *et seq*. If and when Plaintiff shall file a proof of claim in the Bankruptcy Case (the "Proof of Claim"), Plaintiff expressly incorporates any reservation of rights that it shall incorporate in the Proof of Claim.

8. Upon information and belief, Debtor operated License to Chill Heating and Air, Inc. ("Merchant") with its principal place of business located at 1150 Blue Mound Rd. W. Ste 201., Haslet, Texas 76052.  Merchant is a Texas corporation.  Upon information and belief, at all times relevant hereto, the Debtor was Merchant's owner and representative, controlled Merchant, and made all decisions and statements to Kapitus relevant to the issues herein.

9. Kapitus is a secured creditor of Merchant and an unsecured creditor of Debtor with a claim against both in the amount of $145,306.35 (along with additional costs, fees, expenses, and interest), as of October 10, 2019 (the Debtor's petition date) pursuant to the Revenue Based Factoring (RBF/ACH) Agreement executed by Debtor, as defined and more fully detailed below.  The claim itemization is attached hereto as **Exhibit A**.

## GENERAL ALLEGATIONS

10. Debtor filed for bankruptcy under chapter 7 of the Bankruptcy Code on October 10, 2019.  [Doc. No. 1].

11. Pursuant to Official Form 309A filed on October 10, 2019, the deadline to object to discharge is Monday, February 3, 2010.  [Doc. No. 8].

12. Accordingly, this Complaint is timely filed.

## SPECIFIC FACTUAL ALLEGATIONS

13. On or about June 9, 2016, Bridges, on behalf of Merchant, applied for financing with Kapitus.  Bridges had a pre-funding call with Kapitus on or about June 9, 2016 during which Bridges stated to Kapitus that (a) there were no material changes in the Merchant's business, (b) the Merchant was current on all payments to its landlord, (c) Merchant was current on its taxes, including all federal, state and payroll taxes, (d) Merchant did not expect any tax liens to be filed, (e) Merchant was not in arrears on any loans, and (g) Bridges understood that false statements constitute fraud.

14. The relevant portions of the pre-funding call are transcribed below:

Kapitus: We just have a couple of security questions to review.

Kapitus: First have there been any important changes to your business or that impact your business since the last time we funded?

Bridges: No.

Kapitus: and how is the relationship with your landlord?

Bridges: Oh, Fantastic.

Kapitus: Are you able to make all payments on schedule?

Bridges: Yes.

Kapitus: So you are up to date with and current with your business property?

Bridges: Yes.

Kapitus: Are you also current with your taxes including federal state and payroll taxes?

Bridges: Yes.

Kapitus: You don't expect a tax lien to be filed, do you?

Bridges: No.

Kapitus: Do you anticipate having to close your business over the next 12 months, for any reason including planned vacations, renovations you might have, seasonality, or slowed business periods?

Bridges: Yes.

Kapitus: You have reason to close?

Bridges: Oh no! I'm sorry, No I don't have reason to close…but yeah were good.

Kapitus: Have you been planning or is there any reason why you may want to move locations or even sell your business?

Bridges: No.

Kapitus: Have you been planning, or do you have any reason to believe you may need to file for bankruptcy?

Bridges: Oh no.

Kapitus: Do you currently have a balance with any other merchant cash advance provider?

Bridges: Yes.

Kapitus: What's the name of that company?

Bridges: IOU.

Kapitus: Do you remember what your balance is with them?

Bridges: Forty-eight.

Kapitus: Forty-eight thousand?

Bridges: Yep. Forty-eight thousand.

Kapitus: Is that the only balance you have?

Bridges: Uh yeah, and another one called Forward, and its eighteen thousand.

Kapitus: So we have IOU and Forward, are there any others?

Bridges: Uh yeah and TVT, of course.

Kapitus: Oh of course TVT.

Kapitus: Do you understand and recognize that making a false statement or misrepresentation can be construed as breach to your contract, or fraud even, and subject you to legal action?

Bridges: Yep.

Kapitus: Okay. Well if you run into any problems concerning payments, credit card processing, or truly any issue you might have, please give us a call and we'll help you through that. To avoid default please notify us immediately if there are changes to the business or to your account that can affect payback amount. We want to be able to work with you, okay?

Bridges: Yea TVT has been great.

Kapitus: Well good. Do you have our number here in case you need to reach out to us? The Customer support line?

Bridges: Yes.

Kapitus: Okay. Beautiful.

15. On or about June 9, 2016, Bridges, in his capacity as owner and representative of Merchant, and in his individual capacity as guarantor, executed a Revenue Based Factoring (RBF/ACH) Agreement (hereinafter the "Agreement") with Kapitus. A true and correct copy of the Agreement is attached hereto as **Exhibit B**. The Agreement is governed by New York law. *See* Agreement, § 4.5.

16. Pursuant to the Agreement, Kapitus purchased $140,000.00 of future receipts, accounts, contract rights and other obligations generated in the course of Merchant's business operations (the "Receivables"). Contemporaneously with the execution of the Agreement, and as further security, the Debtor executed a personal guaranty (the "Guaranty"), guaranteeing Merchant's full performance of all terms and obligations under the Agreement. A true and correct copy of the Guaranty is attached as part of the Agreement. Under the terms of the Agreement, Kapitus is designated as the authorized servicing agent to service and enforce the agreement; including enforcement through legal action.

17. On or about June 9, 2019, Kapitus paid Debtor $100,000.00 as the agreed purchase price for the Receivables. To allow Kapitus to collect its purchased Receivables, the Agreement required Merchant to use only a single, specified depositing account to deposit all Receivables collected by Merchant (the "Account"), which was designated by the parties in the Agreement and fully accessible to Kapitus. *See* Agreement, p. 1 & pp. 3–4 §§ 1.1, 2.7. From this account, the Agreement entitled Kapitus to collect 9% of the batch amount of Merchant's collected Receivables via Automated Clearing House ("ACH") in a daily amount of $829.00 through debits from the Account. *See id.*, pp. 1, 4, §2.7. The authorization for Kapitus to use the Account to make such transfers is irrevocable by Merchant without Kapitus's consent. *See id.*, pp. 3, §1.1

18. To avoid disruption, the Agreement prohibited changes to the Account or the designation of the deposit account except with Kapitus's express written consent. *See id.* at p. 3 §1.1.

19. In addition to the above terms, by entering the Agreement, Debtor represented, warranted, and covenanted the following:

> **II. REPRESENTATIONS, WARRANTIES AND COVENANTS.** Merchant represents, warrants and covenants that as of this date and during the term of the Agreement:
>
> **2.1 Financial Condition and Financial Information.** [Merchant's] bank and financial statements, copies of which have been furnished to [Kapitus] and future statements which will be furnished hereafter at the discretion of [Kapitus], fairly represent the financial condition of Merchant at such dates, and since those dates there has been no material adverse changes, financial or otherwise, in such condition, operation or ownership of Merchant. Merchant has a continuing, affirmative obligation to advise [Kapitus] of any material adverse change in its financial condition, operation or ownership. . . .
>
> **2.2 Governmental Approvals.** Merchant is in compliance and shall comply with all laws and has valid permits, authorizations and licenses to own, operate and lease its properties and to conduct the business in which it is presently engaged. . . .
>
> **2.7 Daily Batch Out.** Merchant will batch out receipts with the Processor on a daily basis. . . .
>
> **2.9 No Bankruptcy or Insolvency.** As of the date of this Agreement, Merchant represents that it is not insolvent and does not contemplate and has not filed any petition for bankruptcy protection under Title 11 of the United States Code and there has been no involuntary petition under such laws brought or pending against Merchant. Merchant further warrants that it does not anticipate filing any such receivership or bankruptcy petition and it does not anticipate that an involuntary petition will be filed against it. . . .
>
> **2.10 Additional Financing.** Merchant shall not enter into any arrangement, agreement or commitment for any additional financing, whether in the form of a purchase of receivables or a loan to the business with any party other than [Kapitus] without [Kapitus]'s written permission.

**2.11 Unencumbered Receipts.** Merchant has good, complete and marketable title to all Receipts, free and clear of all liabilities, liens, claims, charges, restrictions, conditions, options, rights, mortgages, security interests, equities, pledges, encumbrances of any kind or nature whatsoever or any other rights or interests that may be inconsistent with the transactions contemplated with, or adverse to the interests of [Kapitus].

**2.12 Business Purpose.** Merchant is a valid business in good standing under the laws of the jurisdictions in which it is organized and/or operates, and Merchant is entering into this Agreement for business purposes and not as a consumer for personal, family or household purposes.

*Id.* at pp. 3–4.

20. In executing the Agreement, Debtor agreed that all information provided in forms and recorded interviews was "true, accurate, and complete in all respects", and the Agreement further emphasized that "**ANY MISREPRESENTATION MADE BY MERCHANT OR [DEBTOR] IN CONNECTION WITH THIS AGREEMENT MAY CONSTITUTE A SEPARATE CAUSE OF ACTION FOR FRAUD OR INTENTIONAL FRAUDULENT INDUCEMENT TO OBTAIN FUNDING.**" *See* Agreement at p. 2 (emphasis in original).

21. In reliance on the false representations made by Debtor in the Agreement and the financial statements provide to Kapitus, Kapitus agreed to purchase certain of Merchant's Receivables, as outlined above.

22. Almost immediately after its execution by the parties, Debtor and Merchant materially violated the terms of the Agreement. After making the daily payments from June 29, 2016 through August 31, 2016, Merchant and Debtor placed a stop payment on the Account, in violation of the terms of the Agreement.

23. On or about October 21, 2016, and as a result of the default and breach of the Agreement, Kapitus brought suit against both Merchant and Debtor in the Supreme Court of the State of New York seeking the amount owed under the Agreement, fees incurred, and for court

costs and attorneys' fees in bringing the state court action. In total, Kapitus sought Ninety-Nine Thousand Eighty Six Dollars ($99,086.00) in Receivables and fees due and owing plus interest at a rate of nine percent per annum, plus attorney's fees.

24. On or about March 20, 2018, the Supreme Court of the State of New York entered a judgment against Bridges in favor of Kapitus in the amount of One Hundred Thirteen Thousand Four Hundred Eighty-Nine Dollars 04/XX ($113,489.04). A true and correct copy of the judgment is attached hereto as **Exhibit C**.

25. On October 10, 2019, the Debtor filed for bankruptcy.

26. Upon information and belief, at the time of the Agreement and the pre-funding call and contrary to the representations of the Debtor, Merchant was behind on payments to its landlord. Pursuant to the Debtor's bankruptcy schedules, Blue Mound Business Park, the landlord for the Merchant, was granted a judgment in 2017 against Debtor in the total amount of $13,010.20.

27. On the pre-funding call, the Debtor represented that he did not expect to close his business for any reason over the next twelve months. Considering that the Debtor stopped payments under the Agreement just over two months after entering into this Agreement, it is likely that Debtor knew at the time of entering into the Agreement that the Debtor would close his business. Furthermore, pursuant to the Debtor's schedules, the business of the Merchant existed from 2014 to 2017 at the 1150 Blue Mound Road West address, and from 6/2017 to 2018, at an undisclosed address – a relatively short time after entering into the Agreement. Also, pursuant to the Debtor's schedules, the Debtor is now currently employed at Texas Best Heating & Air which appears to be right next to his residence.

28. Moreover, Debtor and Merchant agreed to use the Account and authorized Kapitus to make daily withdraws pursuant to the Agreement. The authorization the Debtor gave to Kapitus

to make daily withdraws is irrevocable without the consent of Kapitus. Considering the short period of time between funding and the removal of authorization through the stop payment, the Debtor likely knew at the time of entering into the Agreement it did not intend to honor the terms of the Agreement.

29. On the pre-funding call, the Debtor represented that he and Merchant were current on all of its taxes. Pursuant to the Debtor's schedules, the IRS is owed back taxes for 2015 and 2016 in the amount of approximately $100,000. The Debtor certainly knew the representation regarding being current on taxes was false at the time of the pre-funding call and that the representation regarding being in compliance with all applicable laws was false at the time of entering into the Agreement.

30. Upon information and belief, the acts and omissions that constitute default of the Agreement were performed or omitted by, at the direction of, or with the consent of the Debtor.

31. In addition to signing the Agreement in his capacity as an owner and representative of Merchant, Debtor also signed the Agreement as a Guarantor, agreeing to be obligated to all terms of the Agreement. *See* Agreement, pp. 8–9. Indeed, Debtor personally guaranteed that he would not take any action, nor permit Merchant to take any action, that would breach the Agreement.

32. Upon information and belief, Debtor never had any intention to honor the Agreement. Instead, upon information and belief, Debtor intended to use a bank account other than the Account to divert the Receivables proceeds away from Kapitus after the execution of the Agreement.

## COUNT I
## Non-dischargeability of Debt Pursuant to 11 U.S.C. § 523(a)(2)(A)

33. Kapitus realleges paragraphs 1 through 32 and incorporates the same as though set forth herein.

34. Debtor engaged in false pretenses, false statements and actual fraud to obtain money from the Kapitus including the following:

   a. Debtor represented to Kapitus that Merchant was making all payments to its landlord on schedule when the Merchant was not.[3]

   b. Debtor represented to Kapitus that the Debtor and Merchant were current on all its taxes and that it was in compliance with all laws when Merchant owed the IRS back taxes for 2015 and 2016 in the amount of approximately $100,000.[4]

   c. Debtor represented that it did not expect to close its business for any reason in the next twelve months.[5] On information and belief and considering the short period from the funding of the Agreement to its breach, Debtor likely knew this statement was false when it was made.

---

[3] If the statement regarding making all payments to landlord is a statement "respecting the debtor's or an insider's financial condition" as such term is used in 11 U.S.C. § 523(a)(2), then as an alternative to this claim under 11 U.S.C. § 523(a)(2)(A), Kapitus relies on its claim under 11 U.S.C. § 523(a)(2)(B) set forth below.

[4] If the statement regarding being current on all taxes is a statement "respecting the debtor's or an insider's financial condition" as such term is used in 11 U.S.C. § 523(a)(2), then as an alternative to this claim under 11 U.S.C. § 523(a)(2)(A), Kapitus relies on its claim under 11 U.S.C. § 523(a)(2)(B) set forth below.

[5] If the statement regarding expecting to close its business for any reason in the next twelve months is a statement "respecting the debtor's or an insider's financial condition" as such term is used in 11 U.S.C. § 523(a)(2), then as an alternative to this claim under 11 U.S.C. § 523(a)(2)(A), Kapitus relies on its claim under 11 U.S.C. § 523(a)(2)(B) set forth below.

    d. The Debtor agreed to provide Kapitus authority to make daily transfers from the Account and agreed that such authority is irrevocable without Kapitus's consent.[6] Pursuant to the Agreement, the Merchant made payments to Kapitus in the amount of $829.00 per day for the period from June 29, 2016 to August 31, 2016 at which time the Debtor put a stop payment on the Account. Considering that Debtor and Merchant issued a stop payment on the account approximately two months after entering into the Agreement, the Debtor likely did not have any intention to honor the Agreement when he entered into it.

35. On information and belief, Debtor knew the foregoing statements were false when made.

36. On information and belief, the Debtor made the foregoing statements with the intention to deceive Kapitus into providing $100,000 to Merchant.

37. Kapitus justifiability relied on these statements and funded Merchant $100,000.

38. As a result of these false representations, Kapitus suffered a direct loss of Ninety-Nine Thousand Eighty Six Dollars ($99,086.00) in Receivables it purchased but did not collect, plus fees due and owing plus interest at a rate of nine percent per annum, plus attorney's fees.

39. The Debtor's debt to Kapitus is a debt for money, property, services, or an extension, renewal, or refinancing of credit, obtained by false pretenses, a false representation, or actual fraud, and should be deemed non-dischargeable. Kapitus is entitled to an award of damages in the amount of $145,306.35 through October 10, 2016, plus any additional attorneys' fees, costs, interest, and such other relief as the Court deems just and proper.

---

[6] If the statement regarding authority to make daily transfers from the Account and that such authority is irrevocable is a statement "respecting the debtor's or an insider's financial condition" as such term is used in 11 U.S.C. § 523(a)(2), then as an alternative to this claim under 11 U.S.C. § 523(a)(2)(A), Kapitus relies on its claim under 11 U.S.C. § 523(a)(2)(B) set forth below.

## COUNT II
## Non-dischargeability of Debtor Pursuant to 11 U.S.C. § 523(a)(2)(B)

40. Kapitus repeats and realleges paragraphs 1 through 39 and incorporates the same as though set forth herein.

41. Pursuant to Section 523(a)(2)(B) of the Bankruptcy Code, a debt in which a debtor obtains money by a statement in writing that is materially false respecting an insider's financial condition, on which the creditor reasonably relied, and which the debtor caused to be published with intent to deceive is non-dischargeable.

42. Debtor and Merchant, an insider of the Debtor, did obtain money from Kapitus by the following written materially false statements in the Agreement respecting Debtor's and Merchant's financial condition on which Kapitus reasonably relied, among others:

   a. Debtor and Merchant made the following representations and warranties to Kapitus in the Agreement, each of which Kapitus relied upon to provide the funding to Merchant:

   **II. REPRESENTATIONS, WARRANTIES AND COVENANTS.** Merchant represents, warrants and covenants that as of this date and during the term of the Agreement:

   **2.1 Financial Condition and Financial Information.** [Merchant's] bank and financial statements, copies of which have been furnished to [Kapitus] and future statements which will be furnished hereafter at the discretion of [Kapitus], fairly represent the financial condition of Merchant at such dates, and since those dates there has been no material adverse changes, financial or otherwise, in such condition, operation or ownership of Merchant. Merchant has a continuing, affirmative obligation to advise [Kapitus] of any material adverse change in its financial condition, operation or ownership. . . .

   **2.2 Governmental Approvals.** Merchant is in compliance and shall comply with all laws and has valid permits, authorizations and licenses to own, operate and lease its properties and to conduct the business in which it is presently engaged. . . .

> **2.7 Daily Batch Out.** Merchant will batch out receipts with the Processor on a daily basis. . . .
>
> **2.9 No Bankruptcy or Insolvency.** As of the date of this Agreement, Merchant represents that it is not insolvent and does not contemplate and has not filed any petition for bankruptcy protection under Title 11 of the United States Code and there has been no involuntary petition under such laws brought or pending against Merchant. Merchant further warrants that it does not anticipate filing any such receivership or bankruptcy petition and it does not anticipate that an involuntary petition will be filed against it. . . .
>
> 2.10 Additional Financing. Merchant shall not enter into any arrangement, agreement or commitment for any additional financing, whether in the form of a purchase of receivables or a loan to the business with any party other than [Kapitus] without [Kapitus]'s written permission.
>
> **2.11 Unencumbered Receipts.** Merchant has good, complete and marketable title to all Receipts, free and clear of all liabilities, liens, claims, charges, restrictions, conditions, options, rights, mortgages, security interests, equities, pledges, encumbrances of any kind or nature whatsoever or any other rights or interests that may be inconsistent with the transactions contemplated with, or adverse to the interests of [Kapitus].
>
> **2.12 Business Purpose.** Merchant is a valid business in good standing under the laws of the jurisdictions in which it is organized and/or operates, and Merchant is entering into this Agreement for business purposes and not as a consumer for personal, family or household purposes.

*See* Agreement, p. 3-4.

    b. Debtor and Merchant also made statements that Merchant would only use the Account to deposit all Receivables collected by Merchant and the Merchant would not change the Account except with Kapitus's express written consent. See Agreement, p. 1 & pp. 3–4 §§ 1.1, 2.7.

    c. Debtor and Merchant used the representations and warranties in the Agreement and the financial statements provided to Kapitus at the time of entering into the Agreement to misrepresent the financial condition of the Merchant by omitting

        disclosures of outstanding obligations to its landlord and the taxing authorities. Further, contrary to the statements published in the Agreement, Debtor and Merchant misrepresented that that Merchant was in compliance with all laws. As of the date of the Agreement, Merchant was not in compliance with all laws as it had back taxes outstanding for 2015 and 2016 in the amount of approximately $100,000 as reflected in the Debtor's schedules. Kapitus justifiably relied on these representations contained in the Agreement regarding the Merchant's financial condition and compliance with law and financial statements provided to Kapitus to extend the financing and execute the Agreement.

    d. To allow Kapitus to collect its purchased Receivables, the Agreement required Debtor to use only the Account and Merchant gave authority to Kapitus to make daily transfers our of such Account, with such authorization to be irrevocable without the consent of Kapitus. Debtor caused Merchant to use the Account for approximately two months and then ordered a stop payment on the Account. Kapitus justifiably relied on these representations regarding the use of the Account and the agreement not to change the Account except with the written consent of the Kapitus to extend the financing and execute the Agreement.

    43.    On information and belief, Debtor knew the foregoing statements were false when made and with the intent to deceive Kapitus.

    44.    Kapitus reasonably relied on these statements and funded Merchant $100,000.

    45.    As a result of these false representations, Kapitus suffered a direct loss of Ninety-Nine Thousand Eighty Six Dollars ($99,086.00) in Receivables it purchased but did not collect, plus fees due and owing plus interest at a rate of nine percent per annum, plus attorney's fees.

46. As a result of Debtor's statements and acts described above, Debtor is not entitled to a discharge. Accordingly, Debtor's debt to Kapitus should be deemed non-dischargeable pursuant to Section 523(a)(2) of the Bankruptcy Code, and Kapitus is entitled to an award of damages in the amount of $145,306.35 through October 10, 2016, plus any additional attorneys' fees, costs, interest, and such other relief as the Court deems just and proper.

## COUNT III
### Nondischargeability of Debt Pursuant to 11 U.S.C. § 523(a)(4)

47. Kapitus repeats and realleges the above allegations set forth in Paragraph 1 through 46 and incorporates the same herein as though more fully stated at length.

48. Debtor's liability to Kapitus as alleged herein, is a debt "for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny" within the meaning of Section 523(a)(4) of the Bankruptcy Code.

49. The Debtor signed the Agreement as the owner and representative of Merchant. Upon information and belief, Debtor is an officer, director or other fiduciary of Merchant.

50. Merchant is a Texas corporation. Under Texas law, the officers and directors a corporation have fiduciary duties to the corporation's creditors when the corporation is insolvent or in the zone of insolvency.

51. Under the Agreement, Kapitus purchased $140,000.00 of the Merchant's Receivables. To allow Kapitus to collect its purchased Receivables, the Agreement required Merchant to deposit all Receivables into the Account and from the Account Kapitus is entitled to collect 9% of the batch amount of Merchant's collected Receivables via ACH in a daily amount of $829.00 through debits from the Account.

52. The Agreement is governed by New York law. Under New York law, an express trust requires (1) a designated beneficiary, (2) a designated trustee, (3) a fund or other property

sufficiently designated or identified to enable title of the property to pass to the trustee, and (4) actual delivery of the fund or property, with the intention of vesting legal title in the trustee. No particular form of words is necessary. An express trust is a fiduciary relationship with respect to property.

53. The Agreement satisfies the elements of an express trust under New York law. Kapitus is the designated beneficiary of the Receivables held by the Merchant as a trustee. The Receivables are sufficiently designated to pass title to the Merchant as trustee and there was actually delivery of the Receivables to the Merchant. Accordingly, there is a fiduciary relationship with respect to the Receivables.

54. The Debtor is an officer, director or other fiduciary of Merchant. The Debtor, as an officer, director or other fiduciary of the Merchant, is liable as a fiduciary under Section 523(a)(4) of the Bankruptcy Code for the Merchant's debt to Kapitus because the Merchant was entrusted with the Receivables and the debt owed to Kapitus bears a special relationship to the Receivables.

55. On or about September 1, 2016, the Debtor placed a stop payment on the Account thereby to diverting the Receivables that Kapitus purchased.

56. On information and belief, the Merchant was insolvent or in the zone of insolvency at the time the Debtor placed the stop payment on the Account. Therefore, the Debtor owed a fiduciary duty to Kapitus and its other creditors at the time it placed the stop payment on the Account.

57. Kapitus believes and alleges that the Debtor entered into the Agreement with the specific intent to take the Receivables from Kapitus.

58. Upon information and belief, Debtor misappropriated portions of the Receivables for his own benefit. Debtor committed fraud and/or defalcation by being entrusted with the Receivables and misappropriating the Receivables for the Debtor's own use.

59. Alternatively, Debtor committed larceny by taking Kapitus's property, the purchased Receivables, with the intent to permanently deprive Kapitus of such property.

60. Alternatively, Debtor's committed embezzlement because Kapitus entrusted Debtor with the Receivables and the Debtor appropriated these funds by diverting them away from Kapitus for the Debtor's own use.

61. The Debtor's debt to Kapitus is a debt for larceny and/or embezzlement because the Debtor stole the Receivables to be deposited into the Account that Kapitus acquired under the Agreement with the intent to permanently deprive Kapitus of those receivables.

62. Kapitus sustained damages as a result of Debtor's fraud and defalcation while acting as a fiduciary, his embezzlement, and/or his larceny of the Receivables.

63. Debtor's obligation to Kapitus is a debt for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny and should be deemed non-dischargeable. Kapitus is entitled to an award of damages in the amount of $145,306.35 through October 10, 2016, plus any additional attorneys' fees, costs, interest, and such other relief as the Court deems just and proper.

[Remainder of Page Intentionally Left Blank]

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for entry of judgment against the Debtor, as follows:

a. for an award of damages in the amount of $145,306.35;

b. for an order providing that the debt owed by Debtor to Kapitus is non-dischargeable in the instant bankruptcy case, in any other chapter under title 11 to which this case may be converted, and in any future bankruptcy case filed by or against the Debtor;

c. for attorneys' fees, costs and interest accruing on and after October 10, 2019; and

d. for such other and further relief as this Court may deem just and proper.

Dated March 24, 2020.

          DIAMOND MCCARTHY LLP

          */s/ Charles M. Rubio*
          Charles M. Rubio
          Bar No. 24083768
          crubio@diamondmccarthy.com
          909 Fannin, Suite 3700
          Houston, Texas 77010
          Telephone: (713) 333-5100
          Facsimile: (713) 333-5199

          COUNSEL FOR PLAINTIFF
          KAPITUS SERVICING, INC.