# UNITED STATES BANKRUPTCY COURT
# NORTHERN DISTRICT OF TEXAS
# FORT WORTH DIVISION

In re:

DWAYNE PAUL BRIDGES AND
DANA MICHELLE BRIDGES

        Debtors.

_____/

KAPITUS SERVICING INC.  AS
SERVICING AGENT FOR TVT CAPITAL LLC,

        Plaintiff,

v.

DWAYNE PAUL BRIDGES

        Defendant.

_____/

Chapter 7

Case No. 19-44181-elm

Adv. Pro. No. 20-04009-elm

## RESPONSE TO RULE 12(B)(6) MOTION TO DISMISS CERTAIN CAUSES OF ACTION IN AMENDED COMPLAINT

TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE:

Kapitus Servicing Inc., as servicing agent for TVT Capital, LLC ("Kapitus" or the "Plaintiff") in the above-captioned adversary proceeding, files this response (the "Response") to the Rule 12(b)(6) Motion To Dismiss Certain Causes of Action In Amended Complaint (the "Motion")[1] filed by Defendant Dwayne Paul Bridges ("Bridges," the "Debtor" or "Defendant"). In support of the Response, the Plaintiff respectfully states the following:

---

[1] Capitalized terms used but not defined herein shall have the meanings assigned to such terms in the Amended Complaint.

## **PRELIMINARY STATEMENT**

1.  Section 523 of the Bankruptcy Code permits exceptions to discharge under certain exceptional circumstances. Kapitus contends that these exceptional circumstances exist in this case. Kapitus acquired $140,000 of accounts receivables (the "Receivables") from the Merchant, the Debtor's business, based on numerous written and oral representations made by the Debtor on which Kapitus relied in extending financing to the Debtor and the Merchant. Less than two months after purchasing the Receivables, the Debtor placed a stop payment on the Account where the Receivables were being deposited in breach of of the Agreement. *See Agreement* at p. 1 and §1.1. The stop payment immediately stopped any further ACH transfers to Kapitus and deprived Kapitus of the Receivables for which it purchased. On information and belief, following the application of the stop payment, the Merchant continued to receive the Receivables that Kapitus purchased, but the Debtor and the Merchant did not turn over to Kapitus the property Kapitus purchased. Kapitus placed the Debtor in a position of trust to ensure continued performance of the Agreement and the remittance of the purchased Receivables. The Debtor breached that trust and stole Kapitus's property.

2.  As a result of the default and breach of the Agreement, Kapitus brought suit against both Merchant and Debtor in the Supreme Court of the State of New York seeking the amount owed under the Agreement, fees incurred, and for court costs and attorneys' fees in bringing the state court action. In total, Kapitus sought Ninety-Nine Thousand Eighty Six Dollars ($99,086.00) in Receivables and fees due and owing plus interest at a rate of nine percent per annum, plus attorney's fees. The Supreme Court of the State of New York entered a judgment against Bridges in favor of Kapitus in the amount of One Hundred Thirteen Thousand Four Hundred Eighty-Nine Dollars 04/XX ($113,489.04).

3. Section 523(a)(2) of the Bankruptcy Code excepts from discharge certain debts if obtained by false pretenses, false representations, actual fraud, or materially false statements. On or about June 9, 2016, Bridges had a pre-funding call with a Kapitus representative (specific portions of the pre-funding call are set forth below) and Bridges, as both a guarantor and as the representative of the Merchant, entered into the written Agreement with Kapitus which includes, among other representations, that the current and future financial statements provided to Kapitus "fairly represent the financial condition of Merchant at such dates and since those dates there has been no material adverse changes, financial or otherwise, in such condition, operation or ownership of Merchant." Agreement, § 2.1. In connection with the pre-funding call and entering into the Agreement, the Debtor made several materially false representations to Kapitus, in violation of both his oral and written representations.

4. First, the Debtor represented that the merchant was current with its landlord. The relevant portions of the pre-funding call between the Kapitus' representative and the Bridges is as follows:

> Kapitus: and how is the relationship with your landlord?
>
> Bridges: Oh, Fantastic.
>
> Kapitus: Are you able to make all payments on schedule?
>
> Bridges: Yes.
>
> Kapitus: So you are up to date with and current with your business property?
>
> Bridges: Yes.

5. However, contrary to Bridges' representations and pursuant to his own bankruptcy schedules, Blue Mound Business Park, the landlord for the Merchant, was granted a judgment in 2017 against Debtor in the total amount of $13,010.20. Considering the timing of the pre-funding

call which occurred on or about June 9, 2016 and the timing of the landlord's judgment which is reported to have been granted in 2017, it is likely that the Merchant and Bridges were not making all the required payments to the landlord and were not current with the landlord when Bridges made these representations to Kapitus. The financial statements provided to Kapitus in connection with the Agreement do not reflect that the Debtor or the Merchant owed money to the landlord. Kapitus should be afforded an opportunity to conduct discovery on this matter.

6. Second, on the pre-funding call, Bridges represented to Kapitus that Bridges and the Merchant were current on all taxes. The relevant portion of the pre-funding call between the Kapitus' representative and the Bridges is as follows:

> Kapitus: Are you also current with your taxes including federal state and payroll taxes?
>
> Bridges: Yes.
>
> Kapitus: You don't expect a tax lien to be filed, do you?
>
> Bridges: No.

7. The Agreement also provides in relevant part that: "Merchant is in compliance and shall comply with all laws[.]" However, pursuant to the Debtor's schedules, the IRS is owed back taxes for 2015 and 2016 in the amount of approximately $100,000. The Debtor certainly knew the representation regarding being current on taxes was false at the time of the pre-funding call and that the representation regarding being in compliance with all applicable laws was false at the time of entering into the Agreement.

8. Third, Bridges represented to Kapitus that he did not expect to close its business for any reason in the next twelve months. The relevant portion of the pre-funding call between the Kapitus' representative and the Bridges is as follows:

      Kapitus: Do you anticipate having to close your business over the next 12 months, for any reason including planned vacations, renovations you might have, seasonality, or slowed business periods?

      Bridges: Yes.

      Kapitus: You have reason to close?

      Bridges: Oh no! I'm sorry, No I don't have reason to close…but yeah were good.

9. Considering the short period from the funding of the Agreement to its breach, Debtor likely knew this statement was false when it was made. Kapitus should be entitled to conduct discovery on this matter.

10. Fourth, Bridges agreed to provide Kapitus authority to make daily transfers from the Account and agreed that such authority is irrevocable without Kapitus's consent. The Agreement provides in relevant part: "Merchant shall authorize Funder and/or it's agent to deduct the amounts owed to Funder for the Receipts as specified herein from the settlement amounts which would otherwise be due to Merchant by permitting Funder to withdraw the specific daily amount credited against the specified percentages by the ACH debt of the Merchant account. The authorization shall be irrevocable without the written consent of Funder." Agreement, § 1.1. Considering that Bridges and Merchant issued a stop payment on the account approximately two months after entering into the Agreement, the Debtor likely did not have any intention to honor the Agreement when he entered into it. Kapitus should be entitled to conduct discovery about whether the Debtor had the intent to commit fraud when entering into the Agreement.

11. Section 523(a)(4) of the Bankruptcy Code excepts from discharge debts for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny. Kapitus placed the Debtor in a position of trust to ensure continued performance of the Agreement and the remittance of the Receivables that Kapitus purchased. The Debtor breached that trust and stole Kapitus's

5

property. Kapitus should be entitled to conduct discovery about this theft of its Receivables arising after the stop payment.

12. Plaintiff has asserted three separate causes of action against Bridges: (i) a claim for non-dischargeability of debt pursuant to 11 U.S.C. § 523(a)(2)(A) (the "Section 523(a)(2)(A) Claim"), (ii) a claim for non-dischargeability of debt pursuant to 11 U.S.C. § 523(a)(2)(B) (the "Section 523(a)(2)(B) Claim") and (iii) a claim for nondischargeability of debt pursuant to 11 U.S.C. § 523(a)(4) (the "Section 523(a)(4) Claim"). Pursuant to its Motion, the Debtor only seeks to dismiss the Section 523(a)(2)(A) Claim and the Section 523(a)(4) Claim. The Debtor does not seek to dismiss the Section 523(a)(2)(B) Claim; therefore, this claim will survive and Kapitus intends to conduct discovery on this claim.

13. For the reasons set forth herein, the Debtor's Motion should be denied. The parties should proceed to discovery in connection with each of the claims asserted by Kapitus in its Amended Complaint.

**RESPONSE**

14. Under Rule 12(b)(6), a complaint need only contain "a short and plain statement of the claim" that gives "the defendant fair notice of what the … claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 554-55 (2007). Rule 8(a), as interpreted in *Ashcroft v. Iqbal*, 556 U.S. 662, 679, 129 S.Ct. 1937 (2009) and *Twombly*, 550 U.S. at 570, require that a complaint "contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570) (emphasis added). This is a low threshold: actual allegations need only "be enough to raise a right to relief above the speculative level" and to "nudge the claim across the line from conceivable to plausible." *Id*. at 555; *Doe v. Lynn University, Inc.*, 235 F. Supp. 3d 1336, 1340 (S.D. Fla. 2017).

15. In the Fifth Circuit, "[a] motion to dismiss is viewed with disfavor and is rarely granted." *Search Int'l, Inc. v. Snelling & Snelling, Inc.*, 31 F. App'x 151 (5th Cir. 2001) (internal quotation omitted) *citing Kaiser Aluminum & Chem. Sales v. Avondale Shipyards*, 677 F.2d 1045, 1050 (5th Cir.1982). "Rule 12(b)(6) motions to dismiss may be granted only if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Id.* (internal quotations omitted) *citing Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).

16. In determining whether a claim meets this threshold, the Court must accept the complaint's well-pled allegations as true, view them in the light most favorable to the Plaintiff, and accept all reasonable inferences in Plaintiff's favor. *See, e.g.*, *Twombly*, 550 U.S. at 554-55; *McCartney v. First City Bank*, 970 F.2d 45, 47 (5th Cir.1992); *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996); *Watts v. Fla. Int'l Univ.*, 495 F.3d 1289, 1291 (11th Cir. 2007); *Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007). The standard "calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of" the elements necessary to support Plaintiff's claims. *Twombly*, 550 U.S. at 555.

### A. Making Allegations Based on "Information and Belief" Is Appropriate Under the Circumstances

17. The Debtor argues that Kapitus' complaint fails because it makes allegations on "information and belief" and then uses these same allegations to support its claims. Here, it is entirely appropriate for Kapitus to set forth many of its allegations on "information and belief" because (i) the facts are peculiarly within the possession and control of the opposing party and (2) the belief is based on factual information that makes the inference of culpability plausible:

> When a plaintiff sets out allegations on information and belief, he is representing that he has a good-faith reason for believing what he is saying, but acknowledging that his allegations are based on secondhand information that he believes to be true. Prefacing allegations with this standard pleading qualification does not eviscerate

7

>   the sufficiency of a complaint, and this Court is aware of no such case where a complaint was dismissed for overuse of qualifiers. **The Twombly plausibility standard, which applies to all civil actions, does not prevent a plaintiff from pleading facts alleged upon information and belief" in certain circumstances, including where: (1) the facts are peculiarly within the possession and control of the opposing party or (2) the belief is based on factual information that makes the inference of culpability plausible.** However, this Court need not decide the appropriateness of pleading 'upon information and belief' in every circumstance because deciding the plausibility of a complaint is, of course, a 'context-specific task.'

*United States v. Daugerdas*, No. 09CR581, 2020 WL 364601, at *3 (S.D.N.Y. Jan. 22, 2020) (emphasis added, internal citations, quotations and punctuation omitted).  Here, both of these factors are satisfied.  First, the Amended Complaint asserts fraud that requires an understanding of the intention of the Debtor at the time of making the alleged fraudulent statements which are facts entirely in the possession and control of the opposing party.  Second, the facts presently available to Kapitus prior to any formal discovery includes likely misrepresentations regarding being current with the landlord and current on taxes, coupled with the relatively short period of time from receipt of the funds to the default under the Agreement.  These facts make the inference of culpability plausible.

18. Here, Kapitus has stated with sufficient particularity the circumstances constituting fraud.  The Debtor's argument to dismiss these claims based on insufficient allegations should be rejected.

  **B. The Debtor's Interpretation of the Term "Respecting the Debtor's Financial Condition" Is Overly Broad and Inconsistent with Applicable Law**

19. The Debtor argues that each of the statements that form the basis for the Amended Complaint are statements "respecting a debtor's financial condition" and therefore are not eligible to serve as a basis for claims under Section 523(a)(2)(B).  In support of its argument, the Debtor relies on the Supreme Court's decision in *Appling* where the Supreme Court held that a "statement is 'respecting' a debtor's financial condition if it has a direct relation to or impact on the debtor's

overall financial status" and a single asset can have a direct impact on the aggregate financial condition and therefore a statement about a single asset can be a "statement respecting the debtor's financial condition." *Lamar, Archer & Cofrin, LLP v. Appling*, 138 S. Ct. 1752, 1761, 201 L. Ed. 2d 102 (2018).

20. In *Appling*, the Supreme Court went on hold that notwithstanding this broad interpretation, there are many examples of statements that are not "respecting a debtor's financial condition" which can serve as the basis of claims under section 523(a)(2)(A) including misrepresentations about the value of goods, property, and services. *Id.*, n. 5 *citing In re Bocchino*, 794 F.3d 376, 380–383 (3rd Cir. 2015) (holding nondischargeable under § 523(a)(2)(A) civil judgment debts against a debtor-stockbroker who made misrepresentations about investments); *In re Cohen*, 106 F.3d 52, 54–55 (3rd Cir. 1997) (holding that a landlord's misrepresentations about the rent that legally could be charged for an apartment constituted fraud under § 523(a)(2)(A)); *United States v. Spicer*, 57 F.3d 1152, 1154, 1161 (D.C. Cir. 1995) (holding nondischargeable under § 523(a)(2)(A) a settlement agreement owed to the Government based on an investor's misrepresentations of down payment amounts in mortgage applications).

21. Assuming *arguendo* that the statements made by the Debtor regarding being current with his landlord and being current on his taxes are statements respecting the debtor's financial condition; the statements regarding the Debtor's intention not to close his business over the next 12 months and the Debtor's statement about using the Account to deposit the Receivables are not statements that have a direct relation to or impact on the debtor's overall financial status, these are statements about business operations.  These false statements regarding operational status or business potential may form the basis of a section 523(a)(2)(A) claim. *See In re Johnson*, 2019 WL 4164860, at *5 (Bankr. D. Md., August 30, 2019) (a misrepresentation concerning

employment status is not one respecting financial condition and can be the basis for a claim under § 523(a)(2)(A)); *see also In re Drummond*, 530 B.R. 707, 710 n.3 (Bankr. E.D. Ark. 2015) (finding as a matter of law that the requirement of the debtor to notify the Social Security Administration if she returns to work is not a statement that respects the debtor's financial condition); *In re Jones*, 2019 WL 4670876 at *2, n.1 (Bankr. W.D. Missouri, Sept. 23, 2019) (statement regarding employment status is not a statement with respect to financial status); *In re Martin*, 2019 WL 3025248, at *7 (Bankr. C.D. Cal. July 10, 2019) (representations regarding business potential do not qualify as statements respecting financial condition). Therefore, because these statements regarding the Debtor's and Merchant's operations are not statements "respecting the debtor's financial condition" the Section 523(2)(A) claim should not be dismissed.

    **C.**    **Plaintiff Alleges Sufficient Facts to Support its Section 523(a)(4) Claim**

    22.    Defendant alleges that Plaintiff has failed to state a claim for which relief can be granted under 11 U.S.C. § 523(a)(4) as to fraud while acting in a fiduciary capacity because Plaintiff allegedly cannot establish that a trust existed or that Defendant owed Plaintiff fiduciary duties. Not so; accepting Plaintiff's allegations as true, the Amended Complaint contains sufficient factual allegations which give rise to a claim under section 523(a)(4) for fraud or defalcation while acting as a fiduciary.

    23.    Regardless of whether the alleged act at issue is for fraud or for defalcation, section 523(a)(4) requires that a trust relationship existed prior to the wrongful act. *In re Thompson*, 2020 WL 2048006, * 3 (Bankr. N.D. Ga. April 28, 2020); *In re Logan*, 2015 WL 4940041, * 7 (Bankr. N.D. Ga. July 1, 2015). "A technical trust requires property entrusted to the debtor." *Logan*, 2015 WL 4940041, at *7. Defalcation is the failure of a fiduciary to properly account for or produce the trust res according to the terms of the trust. *In re McIntosh*, 320 B.R. 22, 28 (Bankr. M.D. Fla. 2005). For purposes of section 523(a)(4), the defalcation does not need to rise to the level of

embezzlement, fraud, or misappropriation. *Id.*, citing *Quaif v. Johnson, (In re Quaif),* 4 F.3d 950, 955 (11th Cir.1993); *In re Baylis,* 313 F.3d 9, 17–18 (1st Cir.2002).

24. Plaintiff has properly alleged that Defendant owed fiduciary duties to Plaintiff that reach the standard required for a section 523(a)(4) claim. Specifically, Debtor was acting in a fiduciary relationship with Plaintiff because the Merchant was insolvent, and Defendant breached those fiduciary duties. Amended Complaint ¶¶ 49-56.[2] *See e.g., In re VarTec Telecom, Inc.*, No. 04-81694-HDH-7, 2007 WL 2872283, at *2 (Bankr. N.D. Tex. 2007) (recognizing that under Texas law "once a corporation is insolvent, the officers and directors owe fiduciary duties to the corporation's creditors[.]"); *Fagan v. La Gloria Oil & Gas Co.*, 494 S.W.2d 624, 628 (Tex. Civ. App. 1973) (recognizing under Texas law that when a corporation becomes insolvent and ceases doing business, the officers and directors are placed in a fiduciary relation to and owe a fiduciary duty to the creditors).

25. Plaintiff has also properly alleged that an express trust existed between the Plaintiff and Defendant, which further imposed fiduciary duties upon the Defendant. Complaint ¶¶ 52-53. Plaintiff further alleged that Defendant committed acts after the contract was executed (and after the trust and fiduciary duties came into existence) – such as Defendant's failure to provide Plaintiff with, and the prevention of Plaintiff from obtaining, the receipts and receivables Plaintiff purchased from Merchant, that Defendant had collected on Plaintiff's behalf – which, when taken as true, constitute defalcation. Thus, Plaintiff's allegations under section 523(a)(4) are sufficient.

26. Assuming *arguendo* that the Debtor is correct in its argument that the Debtor cannot have a pass-through fiduciary duty to the Plaintiff based on the express trust created between the

---

[2] While Defendant points to case law that the traditional meaning of fiduciary under state law – loyalty, good faith and fair dealing – is too broad for purposes of § 523, Defendant has not cited any case law regarding the sufficiency of fiduciary duties that arise due to insolvency.

11

Plaintiff and the Merchant regarding the Receivables that Plaintiff purchased from Merchant (which Plaintiff disputes), then certainly there is sufficient factual allegations to support that the Debtor committed either larceny or embezzlement with respect to these Receivables. The Agreement provides that "Funder has purchased and shall own all the Receipts described in this agreement . . ."). Agreement, § 1.9. A creditor proves larceny under section 523(a)(4) by showing the debtor's fraudulent intent in taking the creditor's property. *In re Sokol*, 170 B.R. 556, 560 (Bankr. S.D.N.Y. 1994), *affd*, 181 B.R. 27 (S.D.N.Y. 1995), *aff'd and remanded*, 113 F.3d 303 (2d Cir. 1997). A creditor proves embezzlement under section 523(a)(4) by showing that the creditor "entrusted his property to the debtor, the debtor appropriated the property for a use other than that for which it was entrusted, and the circumstances indicate fraud." *In re McDowell*, 162 B.R. 136, 140 (Bankr. N.D. Ohio 1993). In deciding an action for embezzlement or larceny under section 523(a)(4), the Court need not determine whether the debtor was acting in a fiduciary capacity. *See e.g., In re Shinew*, 33 B.R. 588, 592 (Bankr. N.D. Ohio 1983)

27. Kapitus knows that there was a stop payment applied to the Account – this is not a case where the Merchant stopped receiving the Receivables. Kapitus alleges in its Amended Complaint that the Debtor applied this stop payment to "to divert the Receivables proceeds away from Kapitus after the execution of the Agreement." Contrary to the Debtor's statement, Kapitus is not taking the position that simply because it was not paid back the Debtor must have committed larceny or embezzlement. Rather, Kapitus is taking the position that because the Debtor instituted a stop payment on the Account to prevent Kapitus from receiving the Receivables it had already purchased, the Debtor diverted and stole Kapitus's property.

## **CONCLUSION**

Plaintiff respectfully requests that this Court enter an order denying the Debtor's Motion and granting such further relief that is just and proper.

Dated: June 24, 2020

Respectfully submitted,

DIAMOND McCARTHY LLP

*/s/ Charles M. Rubio*
Charles M. Rubio
TBA No. 24083768
crubio@diamondmccarthy.com
909 Fannin, Suite 3700
Houston, TX 77010
(713) 333-5100
crubio@diamondmccarthy.com

*Counsel to Plaintiff*